CALEY, Respondent, v. FLEGENHEIMER, Appellant.*

*September 9—October 6, 1959.*

---

* Motion for rehearing denied, with $25 costs, on December 1, 1959.

For the appellant there were briefs and oral argument by *Henry C. Friend,* attorney, and *Reginald I. Kenney* and *R. Arthur Ludwig* of counsel, all of Milwaukee.

For the respondent there was a brief by *Eastman, Rose & Faller* of Marinette, attorneys, and *Lundgren & Sawyer* of

Menominee, Michigan, of counsel, and oral argument by *John E. Faller.*

FAIRCHILD, J. The notice of appeal embraces a judgment and five orders, one of which was a denial of a motion for summary judgment. The other four orders were not appealable but may, of course, be reviewed on appeal from the judgment. The questions presented are: (1) Whether the purchaser agreed unconditionally to pay the deferred payments; (2) whether the defendant is liable for such payments on stock purchased in the names of others; (3) whether the assignments to plaintiff permit him to prosecute the assigned causes of action; (4) whether personal representatives appointed in other states must qualify in Wisconsin before assignments by them can be recognized; (5) whether the circuit court should have declined to entertain the action or should have stayed it pending the outcome of another action; and (6) whether the dismissal of defendant's counterclaim should have been without prejudice.

We conclude for the reasons which follow that the judgment and the appealable order are to be affirmed.

■ *Liability of the purchaser for the deferred payments.* The plan for the sale of the stock contemplated that the purchaser make an initial payment of $4 per share followed by two deferred payments of $1 per share each, payable one and two years after the initial payment. Plaintiff's theory is that the purchaser agreed unconditionally to pay each of the deferred payments. Defendant claims that if the purchaser determined not to make the deferred payments, the stock was to be sold and the proceeds used to the extent they were sufficient to pay the amounts in default, the purchaser being entitled to the surplus, if any. Plaintiff considers the deposit of the stock with the bank as security for defendant's obligation to pay the deferred payments. Defendant considers that if the purchaser elected not to make the de-

ferred payments, the selling stockholders could look only to the proceeds of the deposited stock. Because the company later went into receivership, the value of the stock, if it has any, is questionable. This action was brought to enforce the alleged personal liability of defendant for the unpaid deferred payments.

It is evidently conceded that if the offer set forth in the option had been accepted before it expired, the purchaser would be personally liable for the deferred payments as claimed by plaintiff, notwithstanding the provision in the option for the pledge of the stock as collateral security. There can be no other interpretation of the language of the option. Defendant relies upon the fact that the record discloses no act which could constitute an exercise of the option before July 7th. Plaintiff can point to no earlier act except a deposit of $60,000 on July 2d to defendant's account with the bank, and to the recital in the agreement executed July 7th that defendant "has elected to exercise" the option. Defendant contends that the offer contained in the option expired without acceptance and that the escrow agreement constituted a new offer by defendant. He contends, further, that this new offer was never accepted and that there was never a contract, or else that the new offer was later accepted and that the escrow agreement, not the option, set forth the terms of the contract.

Defendant suggests that under the escrow agreement, defendant is not bound unconditionally to pay the deferred payments, but that the sellers have no more in the event of default than the right to have the stock sold and the proceeds applied to the amount unpaid. Defendant asserts that even if the escrow agreement does not clearly provide as he contends, it is, at least, ambiguous in this respect, and he should have been permitted to prove the intention of the parties by parol evidence.

We must agree with defendant that on July 7th, when the escrow agreement was executed, it was too late for an acceptance of the offer contained in the option, and the record discloses no act previous to that date which would constitute an acceptance. It is quite clear, however, from the terms of the escrow agreement that the bank and the defendant considered that the option had been exercised and that the escrow agreement was made for the purpose of implementing the provision in the option for the pledge of the stock with the bank as collateral security to guarantee the payment of the deferred payments. The escrow agreement has been set forth in full in the statement of facts. It will be noted that the options then in the hands of the bank are referred to and that the agreement recites that defendant "has elected to exercise" the options. While the escrow agreement provides prospectively for the deposit of 18,564 shares with the bank, it is clear that that exact number of shares were then on deposit. The agreement provides that after the initial payment has been forwarded to the selling stockholders and after transfer of the stock to the names of the defendant and his designees, the stock is "to be held as collateral security to the payment of an additional Two ($2) Dollars per share. . . . which said additional deferred payment of Two ($2) Dollars is to be paid at the rate of One ($1) Dollar per share per year on the 1st day of July in each succeeding two (2) years."

We find nothing in the escrow agreement to indicate any intention that the terms of sale would differ in any respect from the terms set forth in the option.

We find nothing in the record to show that the selling stockholders ever gave the bank authority to contract for the sale of their stock. It may seem strange that both the bank and the purchaser proceeded with the transaction if in fact the option had not been timely exercised or some extension

or ratification obtained from the stockholders. Nevertheless this appears to have been the situation. So far as the record shows, any of the selling stockholders may have been at liberty to reject the check mailed to them on July 27th and decline to sell. So far as the record shows, the letter from the bank to the stockholders, drafted by defendant's attorney, and the accompanying check constituted, in law, the communication of an offer by the defendant to buy. While the letter of transmittal did not refer to the option, such reference may well have been implied under the circumstances. Aside from that implication, however, the letter of transmittal did contain a reference to the purchase price of $6 per share, to the $2 balance being payable in two annual instalments, and to the deposit of the stock to secure the payment of the deferred balance. While it may be true that there was no contract in existence between defendant and any selling stockholder until the stockholder cashed the tendered check, we have no doubt that by then at the latest a contract came into being under the terms of which defendant had promised to pay the sum of $6 per share, and had become unconditionally liable for the amount of the deferred payments.

■ *Defendant's liability for stock registered in the name of others.* It is undisputed that on July 27th, 17,500 shares of stock were registered in the name of a corporation known as River Farms, Ltd. Defendant asserts that at least as to these shares, he was acting merely as agent for River Farms, Ltd., and that its identity as his principal was disclosed before there was any contract. He contends that liability with respect to these shares would not rest upon him and that the recovery in this action must be limited to the amount of the deferred payments on the shares taken up in defendant's name. The parties appear to agree as to the rules of law

involved and there is no contention that the applicable law of Michigan differs from that of Wisconsin.

Defendant relies upon testimony that Mr. Odgers, president of the bank, was advised orally on July 7th that 17,500 shares of the stock were to be registered in the name of River Farms, Ltd., upon the telegram received that day by the bank indicating that River Farms, Ltd., was providing the $100,000 deposited to defendant's account for use in paying for the stock of Superior Sugar Refining Company and Menominee Sugar Company, and upon the bank's knowledge on July 27th of the registration of the certificates of stock.

There was no evidence that any information concerning River Farms, Ltd., was ever communicated to any stockholder. So far as the record shows, all the information that any stockholder had, except that some of them had met defendant, was contained in the option and in the letter of July 27th and accompanying check. The option named the optionees as "Albert Flegenheimer and/or Albert Flegenheimer and Associates of New York City, New York." The name of the purchaser did not appear in the letter of July 27th but the check which accompanied it was signed in the name "Albert Flegenheimer" by the bank as escrow agent. Defendant evidently relies upon a theory that the bank was the agent of the stockholders and that the knowledge of the bank as to the identity of River Farms, Ltd., must be imputed to the stockholders. The option signed by the stockholders named the bank as the prospective escrow bank, and the deposit by the stockholders of their stock with the signed option may have implied that the bank was authorized to receive the acceptance of the offer on behalf of the stockholders. We find nothing, however, to support the argument that the bank was authorized to act for the stockholders in any manner beyond the exercise of the option and the

duties of escrow agent. Therefore, any knowledge of the officers of the bank of the identity of those who were to purchase portions of the stock was immaterial. There was no material issue of fact to be decided by the jury, and the circuit court properly directed the verdict.

■ *Plaintiff as real party in interest.* The capacity in which plaintiff brings this action is not made perfectly clear. He is designated in the caption as "William H. Caley, individually and as assignee, owner, and on behalf of the owners of 17,396 shares of the common stock of the Superior Sugar Refining Company, Plaintiff." In the first paragraph of the complaint, he alleged that he "was the owner of five hundred sixty-three (563) shares of the common stock of the Superior Sugar Refining Company and that he brings this action in his own behalf and on behalf of numerous other stockholders of said Superior Sugar Refining Company, which cause of action was duly assigned to him by stockholders who were the owners of seventeen thousand three hundred ninety-six (17,396) shares of said common stock." Elsewhere he alleged the sum "now due plaintiff herein for his benefit and the benefit of his assignors." In the verification he deposed that he "is one of the plaintiffs" and that he "is united in interest in this action on behalf of certain common stockholders of the Superior Sugar Refining Company and that this verification is made in his own behalf and on behalf of his assignors."

Upon the trial plaintiff produced 49 assignments in the following form:

"For the purpose of enforcing collection of the two dollars balance per share due the undersigned from Albert Flegenheimer and Albert Flegenheimer and Associates under the contract of sale of certain ———— shares of the common stock of the Superior Sugar Refining Company made the 23d day of June, 1954, and in default since July 1, 1955,

I hereby assign, transfer, and set over unto William H. Caley of Menominee, Michigan, all of my right, title, and interest in the said stock and in said contract under the following terms and conditions:

"1. That he will prosecute suit against Albert Flegenheimer and Associates to enforce collection of the balance due under said contract.

"2. That after payment of the expenses of said suit he will pay the undersigned his share of the net proceeds of any recovery in said action, computed in the ratio of the number of shares hereby assigned to the total number of shares represented by William H. Caley in this suit.

"Stockholder.

"Date: May ——, 1956."

Defendant claimed in the later stages of the action in circuit court, and claims upon appeal, that these assignments are conditional in form; that plaintiff is not the real party in interest as to the assigned causes of action, and that it is improper to permit plaintiff to sue upon the assigned causes of action because defendant has a counterclaim against the assignors which cannot be asserted against plaintiff. In the answer and amended answer, defendant was content, on this score, to state that he had no knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first paragraph of the complaint. The amended complaint was verified May 8, 1958, although on January 22, 1958, defendant had adversely examined plaintiff and the form of the assignments was then made known if not before.

It would appear that plaintiff may have been attempting to qualify as a single plaintiff, suing for the benefit of "many persons" with a common interest or of "very numerous" parties under sec. 260.12, Stats.; or may have considered himself a trustee of an express trust so as to be authorized to sue without joining the beneficiaries under sec. 260.15.

Plaintiff now argues that the assignments were absolute, although this argument is inconsistent with the use of language indicating suit on behalf of others. It is clear that the assignors were satisfied to have the action maintained by plaintiff. As to all these matters, *i.e.,* whether the circumstances permit a single plaintiff to maintain an action under sec. 260.12, or whether the assignments constituted plaintiff a trustee so that he could sue without joining the assignors under sec. 260.15, or whether the assignments made him the real party in interest so that he complied with sec. 260.13, we deem that any objections defendant might have been entitled to raise should have been raised prior to or at the time of answer and were waived by failure to do so. Sec. 263.12 provides:

"Except as provided in sec. 262.17, if not interposed by demurrer or answer, the defendant waives the objections to the complaint except the objection to the jurisdiction over the subject matter, but such waiver shall not preclude any challenge to the sufficiency of the evidence to establish a cause of action."

Defendant did move on August 8, 1958, that all references to the assigned causes of action be stricken from the complaint. He based his motion upon the existence of his counterclaims against the assignors and upon a reference to sec. 260.13, Stats., requiring that every action must be prosecuted in the name of the real party in interest. The motion was denied "for the reason that it is lacking in merit, and for the further reason that it comes too late." An appeal from this order was dismissed by this court. At the hearing of motions on May 26th, the court stated that if a jury were not waived, the trial would take place late in June, but that if a jury were waived the case could be tried during the summer. On June 2, 1958, defendant, through counsel then representing him, waived a jury and requested that the case

be scheduled for trial in August because of commitments for June and July. On July 21st, August 26th was fixed as the date of trial. Substitution of counsel occurred thereafter. Under the circumstances the circuit court was well within its discretion in denying the motion to strike, made August 8th and heard August 18th.

Defendant sought to raise the same issue on two subsequent occasions. On October 31, 1958, he moved for summary judgment dismissing the assigned causes of action. On December 15, 1958, after trial, defendant moved to dismiss the assigned causes of action for similar reasons. Both motions were denied. The issue was not raised in the pleadings and could not be properly brought before the court on either the motion for summary judgment or the motion for dismissal after the trial. It is thus unnecessary to consider whether there would have been merit to the objections if timely made.

■ *Qualification of personal representatives appointed in other states.* Several of the selling stockholders were executors or administrators appointed in Michigan probate proceedings. Others were trustees of express trusts. All are apparently resident in Michigan. Plaintiff is a Michigan resident and Superior Sugar Refining Company is a Michigan corporation. The selling stockholders who were personal representatives or trustees and who had sold stock to defendant in that capacity assigned their causes of action to plaintiff. Defendant does not attempt to show that they lack authority under the law of Michigan to assign whatever cause of action they have, but argues that the assignments must not be recognized in a Wisconsin court because none of them filed his original appointment or a certified copy of it in any county court in Wisconsin. Defendant relies upon sec. 287.16, Stats., providing that when no executor or administrator has been appointed in this state on the estate of any nonresident decedent, the foreign executor or ad-

ministrator may, upon such filing, exercise any power over such estate, including sales and assignments, and prosecute any action to collect the demands of such estate which an executor or administrator appointed in Wisconsin could have or exercise. The cause of action here assigned is transitory and intangible property; and the assignments appear to have been validly made in Michigan by Michigan executors, administrators, and trustees to a Michigan resident. Defendant objected to the receipt in evidence of these assignments upon the ground that there had been no filing in Wisconsin. Defendant suggests no reason why the assigning trustees were required to take qualifying action in Wisconsin, and we see no reason why either the trustees or the personal representatives must do so.

Defendant raised this point in seeking summary judgment on October 31st, and in moving to dismiss on December 15th. The denial of his motions in this respect was also correct.

■ *Whether action should have been maintained in a Wisconsin court.* On January 11, 1957, defendant gave notice that he would move for dismissal of the action on the grounds that plaintiff and defendant were both nonresidents of Wisconsin, and that the contract upon which the cause of action is based is a Michigan contract. In opposition, plaintiff filed an affidavit asserting, among other things, that defendant had ceased to do business in Michigan and was not subject to service of process in Michigan; that defendant was operating the Menominee Sugar Company with principal offices in Green Bay, Wisconsin, stock in which was purchased in a companion transaction; that defendant is an international financier with interests in Canada and several European nations, as well as in several states of the United States; that plaintiff did not know of any place where process could be served upon him except Green Bay, and it would involve great effort and expense to try the action in any other jurisdiction. The written decision of the court indicates that upon

hearing defendant broadened his original motion so as to rely upon the rule of *forum non conveniens*. The court indicated its view that defendant had not made a proper showing for dismissal under this doctrine adverting, among other things, to the defendant's studied avoidance, apparently referring to defendant's motion papers, of disclosing his state of residence and his home address. This motion was addressed to the discretion of the court, and it cannot be said that the discretion was abused.

On May 13, 1958, defendant applied for a stay, pending the outcome of an action in the United States district court for the Western district of Michigan. This action had been commenced on May 6, 1958. In the federal court action, defendant and River Farms, Ltd., were plaintiffs, and plaintiff, together with many of plaintiff's assignors, were defendants. The complaint in federal court relates to the same transaction and alleges seven counts against some, or all of the federal court defendants, alleging fraud, misunderstanding, mutual mistake, and breach of warranty and seeking various types of relief including $500,000 damages and rescission of the sale.

The defendant contends that it was an abuse of discretion to deny a stay in the Wisconsin action pending trial in the action in federal court. Defendant points out that the federal court had personal jurisdiction over River Farms, Ltd., and a great many of the stockholders besides plaintiff Caley. The court denied the motion for a stay, but granted another motion of the defendant to permit amendment of his answer and counterclaim. The amended counterclaim incorporated several claims of fraud not included in the original counterclaim.

The motion for stay was directed to the discretion of the court and under the circumstances, we do not find that the discretion was abused. The summons and complaint were served November 26, 1956, so that the Wisconsin action had

been pending seventeen months before the commencement of the federal court action. There were several motions, including a motion to dismiss on the ground of *forum non conveniens* brought by defendant and decided February 25, 1957. The original answer and counterclaim were served April 19, 1957. Reply to counterclaim was served May 7, 1957. Notice of trial was filed September 26, 1957. An adverse examination of plaintiff was taken January 26, 1958. Had defendant submitted himself at an earlier date to the jurisdiction of a court in Michigan, the various advantages to be gained from adjudication in a forum where many of the parties resided might have been urged by defendant with more force. Under the circumstances, defendant's commencing the action in federal court on May 6, 1958, when trial of the Wisconsin action was imminent, may well have suggested that defendant was more interested in delay than in the advantages of the Michigan forum. Defendant attempted to raise these issues again by motion for summary judgment, and, after trial, for dismissal. The motions were properly denied.

■ *Dismissal of defendant's counterclaim upon the merits.* Shortly before the trial, defendant moved to amend his counterclaim so as to allege that although he personally deposited $4 per share for 2,265 shares, he acquired only 976 shares from the plaintiff and his assignors, and acquired the balance from other persons. The amendment was granted so that his prayer for damages on the counterclaim amounted to $3,904. Just before the commencement of the trial, there was a discussion between court and counsel off the record after which the court said to defendant's attorney: "You just said if you litigate the fraud issue. Of course, it's optional with you to substantiate your allegations of fraud, and the burden of proof is upon you as to fraud. That issue is in the case and will be disposed of in this litigation, because the attorneys for the plaintiff insist. Whether you propose to

furnish proof of the fraud is a matter wholly in your control." Defendant's counsel replied: "Well, our present intention is not to litigate the issue of fraud; but if we are sufficiently maligned, or if the testimony is provocative, so that the jury might be prejudiced on the contract issues, then we might have to bring it up; but we would prefer not to. But— Court (interrupting): Well, I trust that all attorneys will keep in mind that on contract issues it is hard to see any occasion to malign anyone or bring in any inflammatory matter." At the close of the testimony, defendant moved for a nonsuit without prejudice on the defendant's counterclaim, noting that there had been no testimony presented on that claim. The plaintiffs opposed the motion, stating that they came prepared to try the issues on the counterclaim and felt that they were entitled to judgment on the merits. The court denied the motion for a nonsuit and ordered dismissal on the merits.

A party does not have an absolute right to a dismissal without prejudice. *Obermeier v. Milwaukee E. R. & L. Co.* (1922), 177 Wis. 490, 495, 188 N. W. 603; *Burling v. Burling* (1957), 275 Wis. 612, 82 N. W. (2d) 807. Therefore, the motion was addressed to the discretion of the circuit court. Under the circumstances, we think that the circuit court did not abuse its discretion. For some reason, defendant asserted fraud only in his counterclaim as a basis for a return of his initial payment. It is difficult to understand why he did not allege fraud as an alternative defense to the plaintiff's cause of action for the unpaid deferred payments. Had he asserted fraud as a defense and failed to prove it, he could not have claimed that the fraud issue was not decided against him. The statement of defendant's counsel above quoted suggests that the fraud counterclaim was injected largely for tactical purposes. Dismissal without prejudice would leave it available for similar use elsewhere. Defendant's failure to move for dismissal without prejudice

at an earlier stage caused plaintiff the effort and expense of preparing for trial of the fraud issue. Had defendant moved promptly after May 26th for leave to discontinue his counter-claim so as not to embarrass his similar claim in the federal court action, a different question would have been presented.

*By the Court.*—Judgment and order denying summary judgment affirmed.